UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, et al., | ) |
| | ) |
| Plaintiffs, | )  2:10-cv-02205-APG-NJK |
| vs. | ) |
| PETER MARIO BALLE, D.C., et al., | )  **O R D E R** |
| | ) |
| Defendants. | ) |

Before the Court is Plaintiffs' Motion for Fees and Costs Pursuant to the Court Order (Docket. No. 258) Granting Sanctions for Motion to Compel (Docket No. 260). The Court has considered Plaintiffs' Motion (Docket No. 260), Defendant Accident Injury Medical Center Inc.'s Opposition and Counter Motion for Reconsideration (Docket No. 264), the Joinder to the Response filed by Defendant Peter Mario Balle (Docket No. 269), and Plaintiffs' Reply (Docket No. 278).

**BACKGROUND**

**I.    Motion for Protective Order (#239)**

On May 16, 2013, thirty days before the close of discovery,[1] Defendants noticed seven depositions, four of which were 30(b)(6) depositions. On June 10, 2013, the Court allowed discovery to continue solely for the purpose of conducting the noticed depositions. On June 13,

---

[1] The discovery cut-off date as of May 16, 2013, was June 16, 2013. The current discovery cut-off date is September 16, 2013.

1  2013, Plaintiffs sent Defendants' counsel a letter objecting to the substance of the Rule 30(b)(6)
2  depositions.
3     On June 21, 2013, the parties met and conferred on the dispute.[2] The parties were not able
4  to reach a resolution. Accordingly, Plaintiffs filed a motion for protective order on June 28, 2013.
5     On July 12, 2013, the Court held a motion hearing on the Motion for Protective Order
6  and, after considering the parties' briefs and the arguments and representations made during the
7  hearing, the Court granted in part and denied in part Plaintiffs' Motion. Docket No. 258.

**II.  Motion to Compel (#242)**

9     On January 18, 2013, Plaintiffs propounded on AIM a Notice of Taking Deposition
10 pursuant to Fed.R.Civ.P. 30(b)(6). The Notice set forth 25 categories upon which the person
11 most knowledgeable was required to testify and 26 categories of documents which AIM was
12 required to produce for copying and examination.  On February 22, 2013, AIM produced Ms.
13 Cecilia Soares as its person most knowledgeable for the deposition. Soares is a Medical Assistant
14 for AIM who also provides front desk and billing support. However, according to Plaintiffs, it
15 became apparent during the deposition that Soares was neither the person most knowledgeable
16 nor adequately prepared with proper documents for the deposition. The deposition lasted
17 approximately 4 hours.
18    On February 26, 2013, Plaintiffs filed a Motion to Compel, Docket No. 194, seeking an
19 order requiring AIM to produce a new/proper 30(b)(6) witness for Plaintiffs to depose.
20 Specifically, Plaintiffs sought to depose Dr. Peter Mario Balle as a 30(b)(6) witness.[3] On April
21 26, 2013, the Court denied Plaintiffs' Motion to Compel, without prejudice, for failure to
22 properly meet and confer. Docket No. 206.
23    On May 2, 2013, the parties met and conferred for an hour and a half, after which
24 Plaintiffs' counsel believed the parties agreed that AIM would work to make Soares more

---

[2] The delay in holding the meet and confer was due to the fact that both Plaintiffs' and Defendants' counsel were in trial.

[3] Throughout her deposition, Soares indicated that Dr. Peter Mario Balle would likely have the answers to many of Plaintiffs' questions.

familiar with the noticed topic areas and competent to testify to those areas at a subsequent deposition.[4] Accordingly, Plaintiffs re-noticed the AIM Rule 30(b)(6) deposition to occur on June 11, 2013.[5] AIM received that deposition notice on May 17, 2013. Other than the date of the deposition, the notice was identical to the notice served on January 18, 2013.

On June 10, 2013, at a hearing before this Court, and the day before the deposition was set to occur, AIM's counsel informed Plaintiffs' counsel that it would not produce a 30(b)(6) witness at the deposition. This was the first time Plaintiffs' counsel was made aware that the deposition would not occur.[6]

On either June 19, or June 20, 2013, the parties held another meet and confer. AIM indicated that it would not produce a 30(b)(6) witness. According to Plaintiffs, there was no explanation at that time, but AIM said it would provide a reason in writing. According to AIM, it stated that it would not produce a 30(b)(6) witness without leave of court, because their 30(b)(6) witness had already been deposed in this case. On June 24, 2013, AIM sent an email indicating that it would not produce a 30(b)(6) witness without leave of court, because their 30(b)(6) witness had already been deposed in this case. According to AIM, the email confirmed that their position had not changed. According to Plaintiffs, this was the first time AIM explained why it would not produce a 30(b)(6) witness.

On July 1, 2013, Plaintiffs filed an Emergency Motion to Compel. Docket No. 242. Plaintiffs sought a court order requiring AIM to produce a 30(b)(6) witness for the categories identified in both the January 18, 2013, and the May 17, 2013, deposition notices and all documents responsive to the request for production accompanying the deposition notices. AIM

---

[4]According to AIM's counsel, she did not agree to educate and produce Soares for further deposition; rather, she indicated that she would discuss that option with her clients.

[5]Plaintiffs' counsel emailed AIM's counsel on May 14, 2013, to try to find a date for the deposition that would work for both parties, but he received no response.

[6]While Plaintiffs' counsel was en route to the hearing on June 10, 2013, his staff called to confirm the deposition per its agreement with the court reporter's office. It was at that time that AIM's counsel first indicated the deposition would not be going forward. AIM's counsel's staff did not provide a reason why the deposition would not occur and Plaintiffs' counsel was not informed of this conversation until after the hearing.

- 3 -

objected on the grounds that it already produced a 30(b)(6) witness and, according to AIM, the categories noticed by Plaintiffs were overly broad.[7]

Plaintiffs also sought a full 7 hours of deposition time with the qualified 30(b)(6) witness and all costs and fees associated with preparing for and attending the February 22, 2013, and June 11, 2013, depositions as well as the costs and fees associated with preparing the motion to compel.

On July 12, 2013, the Court held a hearing on the Motion to Compel (#242). After considering the parties' briefs and the arguments and representations made during the hearing, the Court granted the Motion to Compel. Docket No. 258. The Court ordered Defendants to produce a proper 30(b)(6) witness for a full seven hours of deposition and ordered Plaintiffs to file a document with the Court indicating which topics had already been responded to by Soares. *See* Docket No. 258.

**III.    Motion for Fees and Costs Pursuant to Court Order (#258) Granting Sanctions (#260)**

At the July 12, 2013, hearing, because the Court granted the Motion to Compel, the Court granted Plaintiffs' request for sanctions under Rule 37. The Court instructed Plaintiffs to submit a motion to the Court which specified all sanctions sought, as well as documentation for those sanctions. Thereafter, Defendants had one week to file any objections.

On July 19, 2013, Plaintiffs filed the present Motion for Attorney's Fees. Therein, Plaintiffs indicate that they seek costs and fees associated with (a) the February 22, 2013, deposition at which Soares was not a proper 30(b)(6) witness; (b) the meet and confer that took place on May 2, 2013, which attempted to resolve the improper 30(b)(6) witness issue; (c) the June 11, 2013, scheduled deposition which was canceled at the last minute; and (d) the Motion to Compel which was brought as a result of AIM's decision not to produce a 30(b)(6) witness for that deposition. Plaintiffs outline their costs and fees, indicating that they seek a total of $7,482.10 from Defendant AIM as well as its counsel, Karen Ross, individually.

On July 26, 2013, Defendant AIM filed its Opposition to Plaintiffs' Motion for Fees and

---

[7]Defendants had not previously complained that the categories were overly broad.

- 4 -

1 Costs Pursuant to Court Order Granting Sanctions and Counter Motion for Reconsideration of

2 Order Granting Sanctions. Docket No. 246. AIM argues that the February 22, 2013, deposition

3 was at least partially productive and the June 11, 2013, deposition was postponed due to the

4 Courts' order at the June 10, 2013, hearing. On July 31, 2013, Defendant Peter Mario Balle filed

5 a joinder to this Response and Counter Motion. Docket No. 269.

6       Plaintiffs filed their Reply on June 5, 2013. Docket No. 278.

7 <center>**DISCUSSION**</center>

8 **I.    Counter Motion for Reconsideration**

9       Defendants have moved for reconsideration pursuant to Fed.R.Civ.P 60(b). Rule 60(b)

10 provides:

11       (b) *Grounds for Relief from a Final Judgment, Order, or Proceeding*. On motion and just terms, the court may relieve a party or its legal representative from a final
12       judgment, order, or proceeding for the following reasons:

13       (1) mistake, inadvertence, surprise, or excusable neglect;

14       (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
15

      (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or
16       misconduct by an opposing party;

17       (4) the judgment is void;

18       (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer
19       equitable; or

20       (6) any other reason that justifies relief.

21 Fed.R.Civ.P 60(b)

22       Defendants, although failing to specify how Rule 60 is satisfied, base their counter

23 motion for reconsideration on the premise that at the June 10, 2013, hearing, the Court postponed

24 the June 11, 2013, 30(b)(6) deposition due to the filing of Plaintiffs' Emergency Motion for

25 Protective Order. To support this assertion, Defendants cite to Docket Nos. 230 and 240. Docket

26 No. 230 is a Minute Order shortening the briefing deadlines for the motion for protective order to

27 a Response date of June 5, 2013, and a Reply date of June 7, 2013. Docket No. 240 is a Minute

28 Order entered on June 28, 2013, eighteen days after the relevant hearing, and it concerns a second

<center>- 5 -</center>

1  protective order brought by Plaintiffs when the parties still could not agree on the scope of the
2  depositions noticed by AIM.  Both minute orders concerned the seven depositions noticed by
3  AIM during the last 30 days of discovery.  The 30(b)(6) deposition noticed by Plaintiffs was not
4  before the Court when those minute orders were issued.

5        Similarly, the June 10, 2013, hearing did not concern the 30(b)(6) deposition noticed by
6  Plaintiffs. The June 10, 2013, hearing concerned the protective order brought by Plaintiffs, which
7  sought to reschedule or prevent the seven depositions unilaterally noticed by AIM on dates when
8  it was aware Plaintiffs' counsel and witnesses were not available. The 30(b)(6) deposition
9  noticed by Plaintiffs was only addressed after the Court made its ruling that AIM's depositions
10 could continue if they were re-noticed for dates and times that would work for all parties. At that
11 time the Court stated that the 30(b)(6) deposition noticed by Plaintiffs could also be rescheduled
12 if necessary.[8] Plaintiffs' counsel then informed the Court that the deposition had already been
13 rescheduled for June 11, 2013, and that it did not need to be rescheduled. It was only then that
14 AIM's counsel stated that it would not produce a 30(b)(6) witness on June 11, 2013, because it
15 believed it already produced a proper 30(b)(6) witness.  AIM and Plaintiffs' counsel then began
16 to argue with one another about why AIM's counsel had not previously informed Plaintiffs'
17 counsel of the objection. The Court instructed counsel that it was not proper for them to talk to
18 each other during the hearing and if the parties had a dispute relating the 30(b)(6) deposition
19 noticed by Plaintiffs, they had to meet and confer on that issue before bringing any dispute to the
20 Court. The Court made clear it was only ruling on the motion before it, which was Plaintiffs'
21 motion for protective order. Docket No. 236.

22       Therefore, to indicate that the Court had any involvement whatsoever in the
23 nonoccurrence of the June 11, 2013, deposition is a complete misrepresentation. Indeed, the
24 30(b)(6) deposition noticed by Plaintiffs never came before the Court until Plaintiffs filed their
25 motion to compel. Therefore, the Court's decision to grant Rule 37 sanctions for the June 11,
26 2013, scheduled deposition was not due to mistake, inadvertence, surprise, excusable neglect,
27
28       [8]This was in the last 2 minutes of the 45-minute hearing. *See* Docket No. 236.

- 6 -

1  newly discovered evidence, misrepresentation or fraud or misconduct by an opposing party.
2  Further, no other reason exists that justifies relief pursuant to Fed.R.Civ.P. 60(b). Accordingly,
3  the Court denies Defendants' request for reconsideration.

**II.    Sanctions**

When a Rule 37 motion is granted, the court "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising the conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." FED. R. CIV. P 37(a)(5). However, "the court must not order this payment if: (1) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (2) the opposing party's nondisclosure, response, or objection was substantially justified; or (3) other circumstances make an award of expenses unjust." *Id*.

Here, during the July 12, 2013, hearing, the Court granted Plaintiffs' request for sanctions pursuant to Rule 37, because it granted Plaintiffs' Motion to Compel. The Court instructed Plaintiffs to specify all sanctions sought and provide the court with documentation for those sanctions. Additionally, in accordance with Rule 37, the Court gave Defendants an opportunity to be heard by instructing Defendants to file any objections to Plaintiffs' motion for sanctions within one week of the filing of Plaintiffs' motion.

**A. Good Faith**

The first inquiry therefore is whether Plaintiffs attempted in "good faith" to confer with AIM before filing the motion and requesting court action. "[G]ood faith mandates a genuine attempt to resolve discovery dispute through nonjudicial means, and conferment requires party to have had or attempted to have had an actual meeting or conference." *Shuffle Master, Inc., v. Progressive Games Inc.* Et. al., 170 F.R.D 166.

Here, the parties met and conferred for an hour and a half on May 2, 2013, after which Plaintiffs' counsel believed the parties agreed that AIM would work to make Soares more familiar with the noticed topic areas and competent to testify to those areas at a subsequent deposition. When the discussed 30(b)(6) deposition did not take place on June 11, 2013, the

- 7 -

1  parties held another meet and confer on or around June 19, 2013. At that time, AIM indicated
2  that it would not produce a 30(b)(6) witness.  On June 24, 2013, AIM sent an email again
3  indicating that it would not produce a 30(b)(6) witness without leave of court. Therefore,
4  Plaintiffs attempted in "good faith" to confer with AIM before filing the motion and requesting
5  court action.

   **B. Substantial Justification**

7  The second inquiry is whether AIM's objection to Plaintiffs' discovery requests was
8  substantially justified.  A losing party on a motion to compel discovery is "substantially justified"
9  if "reasonable people could differ as to whether the [losing party] must comply [with discovery
10 requests]." *See Srinivasan v. Devry Institute of Technology*, 53 F.3d 340 (9th Cir. 1995) (citing
11 *Reygo Pacific Corp. v. Johnson Pump Co.*, 680 F.2d 647, 649 (9th Cir. 1982)(overturned on other
12 grounds)).

13 Here, AIM argued that its 30(b)(6) witness already been deposed and some of the noticed
14 categories were overly broad. However, as the Court discussed at length during the July 12, 2013,
15 hearing, Soares was not a proper 30(b)(6) witness as she clearly was not able to testify to the
16 majority of the noticed categories. Therefore, the Court finds that reasonable people would not
17 differ as to whether AIM had to produce a proper 30(b)(6) witness after it was apparent that
18 Soares was not a proper 30(b)(6).

19 Nevertheless, as Soares was able to testify to some of the noticed topics at her February
20 22, 2013, deposition, and her deposition was not entirely fruitless, the Court denies the request
21 for attorney fees relating to that deposition.

22 However, the Court grants the request for costs and fees related to the June 11, 2013,
23 deposition and the subsequent motion to compel. AIM did not raise its "over-broad" objection
24 until June 24, 2013, when the proper time to raise its first objection would have been prior to the
25 February 22, 2013, deposition of Soares. At that time, the parties should have met and conferred
26 and Plaintiff could have narrowed and clarified the categories if necessary. However, AIM
27 waited over five months after it was first noticed of the deposition categories to indicate that it
28 believed the categories were overly broad. AIM has provided no justification for this delay nor

- 8 -

has it argued that a reasonable person would believe that it was acceptable to wait five months to raise an objection in these circumstances. Therefore, the Court finds that AIM's objections to the motion to compel and the June 11, 2013, deposition were not substantially justified.

### C. Other Circumstances

The third and final inquiry is whether other circumstances make an award of fees unjust. Traditionally, the "other circumstances" exception is only met when an award of fees would create an unreasonable financial burden on the losing party. AIM has not claimed, nor does the Court have any information indicating that granting a request for fees would create an unreasonable financial burden. The award of reasonable fees therefore is not unjust.

Plainly, AIM's counsel meets none of the FED. R. CIV. P 37(a)(5) exceptions. Accordingly, the Court grants reasonable fees and expenses to Plaintiffs' counsel.

## III.   Reasonable Expenses are Calculated Using the "Lodestar" Method

The Court determines whether the amount of a Rule 37 request for attorneys' fees is reasonable using the two part "lodestar" method. *Intel Corp. v. Terabyte Int'l*, 6 F.3d 614, 622 (9th Cir. 1993) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). First, the court computes the "lodestar" figure by multiplying the reasonable hourly rate by the number of hours expended. *Carpad, Inc. v. Brookstone Co.*, 2005 LEXIS *2 (D. Nev.) (applying the lodestar approach to calculate attorneys fees awarded to party that prevailed on Rule 37 motion for violation of existing court order) (citing *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). Second, the court considers whether to adjust the lodestar figure based on the relevant factors listed in *Kerr v. Screen Extras Guild, Inc.*, 525 F.2d 67, 70 (9th Cir. 1975). In the District of Nevada, the Kerr factors have been codified in LR 54-16(b)(3). *Johnson v. Incline Village Gen. Improvement Dist.*, 5 F. Supp. 2d 1113, 1116 (D. Nev. 1998).

### A. The "Lodestar" Figure

The "lodestar" figure is calculated by multiplying the reasonable hourly rate by the number of hours reasonably expended. The reasonableness of the hourly rate is calculated according to the "prevailing market rates in the relevant community." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997) (*quoting Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Generally,

the relevant community is the forum in which the court sits. *Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir. 1991). Here, Las Vegas, Nevada is the relevant community.

### 1. Hourly Rate

The first inquiry is whether the submitted rate is reasonable in the Las Vegas area. The established standard is "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986). Here, Plaintiffs' counsel submitted two affidavits requesting the Court find the rates of $180 per partner and of counsel hour, and $165 per associate hour, is reasonable. Docket No. 260-1,2. Plaintiffs' counsel provided no documents to the Court which verify if the requested amount is reasonable in the local community. However, no counter affidavit or argument relating to Plaintiffs' counsel's hourly rate has been filed by defense. Plaintiffs' counsel's hourly rate was clearly provided in the affidavits of Bruce Kelley and Eron Cannon, and Defendants failed to address or oppose those rates. Accordingly, the Court concludes that Defendants do not object to Plaintiffs' counsel's hourly rate. Further, the Court, based on its own familiarity with attorney rates in Las Vegas, concludes that a billing rate of $180 per partner and of counsel hour, and $165 per associate hour is reasonable.

### 2. Hours Expended

The party requesting fees must next demonstrate that the hours expended are reasonable. The moving party therefore should provide the Court and opposing party with its relevant billing statements. *See Roush v. Berosini*, 66 Fed. Appx. 725, 726 (9th Cir. 2003). However, an award of attorneys' fees may be based on the affidavits of counsel, so long as they are "sufficiently detailed to enable the court to consider all the factors necessary in setting the fees." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 946 (9th Cir. 1993); quoting *Williams v. Alioto,* 625 F.2d 845, 849 (9th Cir.1980) (per curiam), *cert. denied,* 450 U.S. 1012, 101 S.Ct. 1723, 68 L.Ed.2d 213 (1981); *accord Sablan v. Department of Fin. of N. Mariana Islands,* 856 F.2d 1317, 1322 (9th Cir.1988) ("sufficiently detailed to provide an adequate basis for calculating the award"); *Shakey's Inc. v. Covalt,* 704 F.2d 426, 435 (9th Cir.1983) ("ample evidence to support the attorney's fee award"); *Manhart v. City of Los Angeles,* 652 F.2d 904, 908 (9th Cir.1981) ("sufficiently detailed to

1  provide a basis for the award"), *vacated on other grounds,* 461 U.S. 951, 103 S.Ct. 2420, 77

2  L.Ed.2d 1310 (1983). The Court may then evaluate the fee amount requested and determine if the

3  hours expended are reasonable for the work done. See *Henry,* 983 F.2d at 946.

4        Here, the affidavits of Bruce Kelley and Eron Cannon are sufficiently detailed to enable

5  the Court to consider all factors necessary in setting fees. The affidavits disclose the nature of the

6  services rendered in connection with unavailing efforts to obtain a proper 30(b)(6) witness, the

7  amount of attorney time so consumed by each attorney, and the rates at which this time was

8  billed to the client. Additionally, Defendants have not objected to the hours expended as listed in

9  the affidavits.

10       Plaintiffs' counsels' affidavits request a total of $7,482.10 for fees incurred as a result of

11 their efforts to obtain a proper 30(b)(6) witness. However, $1,614.10 of the requested fees relate

12 to the February 22, 2013, deposition which, as discussed above, will not be included in the

13 calculation of sanctions.

14       Next, Plaintiffs seek compensation for the hours expended in the meet and confer

15 process. According to the affidavit of Eron Cannon, Plaintiffs spent 2.3 partner hours preparing

16 for and attending the meet and confer. The Court finds that 2.3 hours is a reasonable amount to

17 expend on the meet and confer efforts in these circumstances and, therefore, the Court will not

18 deduct hours from these hours submitted.

19       As to the June 11, 2013, deposition which never occurred, Plaintiffs seek 2.5 partner

20 hours of compensation. However, the deposition never occurred and, as Plaintiffs have pointed

21 out numerous times in their motions relating to this matter, the deposition notice sent for the June

22 11, 2013, deposition, was basically identical to the deposition notice sent for the February 22,

23 2013, deposition. The Court finds that it is unlikely that Plaintiffs spent 2.5 hours changing the

24 date on the deposition notice. Accordingly, the Court will deduct 2.5 hours from the hours

25 submitted.

26       Concerning the Motion to Compel, Plaintiffs seek 3.7 partner hours and 9.6 associate

27 hours. According to the affidavit of Eron Cannon, Dylan Todd spent 3.5 hours drafting the

28 motion and 6.1 hours drafting the reply, and Eron Cannon spent 2.2 hours drafting the motion

1   and 1.5 hours drafting the reply. Defendants have not objected to these hours expended nor is
2   there any other apparent reason why these hours might be unreasonable. Accordingly, the Court
3   will not deduct hours from these hours submitted.
4       Finally, for the July 12, 2013, hearing, Plaintiffs request 2.4 hours for Eron Cannon's
5   preparation and attendance, and 4.4 hours[9] for Bruce Kelley's preparation and attendance, for a
6   total of 6.8 partner hours. Defendants have not objected to these hours expended nor is there any
7   other apparent reason why these hours might be unreasonable. Accordingly, the Court will not
8   deduct hours from these hours submitted.
9       In sum, the Court has deducted all fees related to the February 22, 2013, deposition and
10  the June 11, 2013, deposition. Although the Plaintiffs did not submit their billing statements,
11  these reductions are discoverable without the billing statements themselves. See *Roush,* 66 Fed.
12  Appx. at 726. Additionally, any doubts the Court may have had regarding the sufficiency of the
13  documentation submitted in support of the fee application have been removed by awarding less
14  than half of the amount of fees requested by Plaintiffs. *Id*.
15      Based on multiplying the reasonable partner hourly rate of $180 by the reasonable partner
16  hours of 12.8 (2.3 + 3.7 + 6.8) and adding it to the reasonable associate hourly rate of $165 by the
17  reasonable associate hours of 9.6, the reasonable "lodestar" figure is $3,888.
18  **B. Kerr Factors**
19      The second step in the inquiry is whether the lodestar figure should be adjusted based on
20  the *Kerr* factors. *See supra*. at 3. The *Kerr* factors are: (1) the time and labor required; (2) the
21  novelty and the difficulty of the questions involved; (3) the skill required to perform the legal
22  service properly; (4) the preclusion of other employment; (5) the customary fee; (6) whether the
23  fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the
24  amount involved and the results obtained; (9) the experience, reputation, and ability of the
25  attorney; (10) the "undesirability of the case; (11) the nature and length of the professional

---

[9]The affidavit of Eron Cannon states that Bruce Kelley spent 4.6 hours preparing and attending the hearing. However, Bruce Kelley states in his affidavit that he spent 1.8 hours preparing on July 11, 2013, and 2.6 hours preparing for and attending the hearing on July 12, 2013. This results in a total of 4.4 hours.

relationship with the client; and (12) award in similar cases. *Kerr*, 525 F.2d at 70; *see also* LR 54-16. The Court has considered the relevant *Kerr* factors and finds that legal and factual issues in this case do not warrant an adjustment to the "lodestar" figure in either direction.

### C. Party Responsible to Pay Fees

Plaintiffs ask the Court to award sanctions against both Defendant AIM and AIM's Counsel, Karen Ross. Docket No. 260, at 4 and 9. The Court finds that the facts of this case show that both Aim and its counsel, Ms. Ross, were responsible for the actions that caused Plaintiffs to have to engage in the meet and confer, and to file the motion to compel. Therefore, the Court orders that sanctions are awarded against both Aim and its counsel.

## CONCLUSION

Based on the foregoing, and good cause appearing therefore,

IT IS HEREBY ORDERED that Plaintiffs' Motion for Fees and Costs Pursuant to the Court Order (Doc. No. 258) Granting Sanctions for Motion to Compel (#260) is **GRANTED**.

IT IS FURTHER ORDERED that Plaintiffs are awarded the sum of $3,888 in attorney's fees and costs due forthwith.

IT IS FURTHER ORDERED that Defendant AIM and AIM's counsel, Karen Ross, shall be jointly and severally responsible for the total amount of the award.

IT IS FURTHER ORDERED that Defendant AIM's Counter Motion for Reconsideration (#264) is **DENIED**.

DATED this  15th   day of August, 2013.

_____
**NANCY J. KOPPE**
**United States Magistrate Judge**