UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY; ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY; ALLSTATE INDEMNITY COMPANY; and ALLSTATE FIRE & CASUALTY INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>PETER MARIO BALLE, D.C.; SEBASTIAN P. BALLE, M.D., ARTHUR ROSSI, D.C.; RICHARD CHARETTE; ELITE ATL, LLC., ACCIDENT INJURY MEDICAL CENTER, INC.; ACCIDENT TRIAL LAWYERS, LLC.; REAL TIME MARKETING, INC.; EXPERT MANAGEMENT, INC.; ANDREW TAYLOR; RAMSEY AND ASSOCIATES, INC.; and DENNIS RAMSEY.<br><br>Defendants. | Case No. 2:10-cv-02205-APG-NJK<br><br>ORDER<br><br>(Def.'s Motion to Dismiss – dkt. no. 176) |

**I.   SUMMARY**

Before the Court is Defendant Sebastian P. Balle, M.D.'s ("Balle") Motion to Dismiss (ECF No. 176). For the reasons discussed below, the Motion is denied.

**II.   BACKGROUND**

This is a civil RICO and fraud case brought by various Allstate insurance entities ("Plaintiffs") against a group of doctors, lawyers, and their corresponding corporate entities (collectively, "Defendants"). The Complaint alleges that Defendants colluded to submit false and

1  inflated medical reports and documentation on behalf of claimants injured primarily in
2  automobile accidents. Defendants allegedly falsified medical reports and diagnoses with
3  exaggerated, unsubstantiated, or non-existent symptoms, billed for treatment not performed, not
4  necessary, or inadequately performed, and double billed under multiple insurance billing codes.
5  These falsified documents were then submitted to claimants' attorneys or to the Plaintiffs
6  themselves to inflate the ultimate insurance settlement and corresponding payments to
7  Defendants.

8  Plaintiffs filed their original complaint on December 20, 2010 for (1) violation of the
9  Racketeering Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1962(c) – Conduct
10  of Enterprise Through Racketeering; (2) violation of RICO 18 U.S.C. § 1962(d) – Conspiracy; (3)
11  Fraud and Intentional Misrepresentations; (4) Conspiracy to Defraud; (5) violation of Nevada
12  State Racketeering Influenced and Corrupt Organizations Act, NRS § 207.400; (6) Innocent
13  Victim Enterprise violation of NRS § 207.400(c); (7) Constructive Trust and Unjust Enrichment;
14  and (8) Negligent Misrepresentation. Plaintiffs filed a First Amended Complaint to add an
15  additional entity, and a subsequent Second Amended Complaint (the "Complaint") —challenged
16  here — which contained more detail about the injured claimants underlying the allegedly
17  fraudulent claims.

18  Many Defendants moved to dismiss the Complaint, including Defendants Accident Injury
19  Medical Center Inc. and Arthur Rossi, D.C. (ECF No. 68.) Balle filed a joinder to that Motion,
20  (ECF No. 71); after the Court denied it (ECF. No. 88), Balle filed his Answer. (ECF No. 102).
21  Balle then filed this Motion, seeking to dismiss only Plaintiffs' RICO claims.

22  **III.   DISCUSSION**
23  **A. Legal Standard**
24  Initially, the court notes that Balle purports to bring a motion to dismiss for failure to state
25  a claim under Fed. R. Civ. P. 12(b)(6). However, Balle filed the Motion after he filed his
26  Answer. Under Rule 12(b), where a responsive pleading is required, any defensive motion must
27  be submitted before the responsive pleading. Consequently, a 12(b)(6) motion is untimely at this
28

stage in the litigation. *See* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1361 (3d ed. 2004). Nonetheless, because the failure to state a claim defense is not waived under Rule 12(h)(2) as long as the defense is asserted in the answer, courts routinely consider post-answer motions to dismiss for failure to state a claim as motions for judgment on the pleadings under Rule 12(c). *See, e.g., Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). Accordingly, the court will consider Balle's Motion as one for judgment on the pleadings under Rule 12(c).

When a Rule 12(c) motion asserts the defense of failure to state a claim, the court applies the same test under Rule 12(b)(6). *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988). Accordingly, the court must accept all material allegations in the complaint as true, and all doubts are resolved in the light most favorable of the plaintiff. *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986). Nonetheless, vague allegations, legal conclusions, and mere recitals of the elements of a cause of action supported only by conclusory statements are not entitled to the assumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Where the allegations "state a claim to relief that is plausible on its face," the motion must be denied. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal (or judgment under Rule 12(c)) is appropriate when the well-pled facts do not permit the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678.

**B. Analysis**

Balle's Motion identifies four purported deficiencies, which Balle argues render the allegations under the complaint insufficient to maintain a RICO claim against him. First, Balle argues that Plaintiffs lack standing because the Complaint does not specify specific harms to specific plaintiffs. Second, Balle argues that the elements of a RICO claim have not been sufficiently pled because the Complaint does not allege the existence of an "enterprise" distinct from "persons" involved in illegal conduct. Third, Balle argues that the Complaint lacks sufficient allegations particularized to him to maintain a claim against him personally. Finally, Balle argues that the allegations of the "predicate acts" necessary for a RICO claim are not pled

with particularity. The court finds that Balle's arguments are without merit, and that his Motion should be denied.

### 1. Standing

Balle contends that all Plaintiffs lack standing because they have not pled actual, concrete financial loss. Balle argues that the Complaint "fails to identify the business entity which actually *paid* the claims at issue and further fails to state how much the Defendants were allegedly overpaid." Balle concludes that the result of the Complaint's collective reference to Plaintiffs and their aggregate harm is that no specific Plaintiff has alleged any direct loss.

Balle's argument is based on a misapplication of the standard. Although each Plaintiff eventually must prove its specific damages, the Complaint need only contain allegations that each Plaintiff paid more on insurance claims and settlements than it otherwise would have, due to Defendants' fraudulent inflation of claims. The Complaint does this. Further, although the Complaint refers to the Plaintiffs collectively and does not break out each Plaintiff's individualized harm, it is plausible that each Plaintiff-entity paid some portion of the alleged 89 false insurance claims. Consequently, Plaintiffs have pled actual, concrete financial loss, and have standing to bring suit.[1]

### 2. Enterprise

Balle next argues that the Complaint does not allege an "enterprise" that is separate and distinct from the "person" or the "pattern of racketeering" under RICO. The elements that must be pled in a RICO action are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. IMREX Co.*, 473 U.S. 479, 496 (1985). In addition, the "person" perpetrating the conduct must be distinct from the "enterprise." *Cedric Kushner*

---

[1] Balle's cited cases are not on point as each deals with indirect or speculative types of harm as opposed to a direct harm generalized among plaintiffs. *See Evans v. City of Chicago*, 434 F.3d 916, 925-27 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, No. 12-3447, 2013 WL 3942935, at *2 n.1 (7th Cir. Aug. 1, 2013) (loss of wages during time plaintiff was lawfully arrested and detained not actual, concrete harm); *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 223 (2d Cir. 2008), *abrogated in part on other grounds by, Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) (marketing of cigarettes was not direct cause of harm absent a showing of reliance on that marketing when purchasing cigarettes). These indirect and speculative harms are inapposite to the direct financial loss alleged by Plaintiffs.

*Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). In other words, the "enterprise" cannot simply be the "person" referred to by a different name. *Id.*; *see also McCullough v. Suter*, 757 F.2d 142, 144 (7th Cir. 1985) (sole proprietorship with no other employees or associations could not be enterprise since "you cannot associate with yourself . . . just by giving yourself a *nom de guerre*.") However, courts have held that employees acting within the scope of their employment, as well as sole shareowners, are sufficiently distinct from the corporation to constitute a "person" and an "enterprise" under RICO. *Cedric*, 553 U.S. at 163.

        Balle's characterization of the Complaint is simply incorrect. This is not a case where Balle and the "enterprise" are the same person, simply going by two names. Nor is it a case where the Complaint merely alleges illegal activity on the part of several defendants. Rather, the Complaint alleges that Balle worked in concert with other medical professionals, corporations, marketing professionals, and personal injury lawyers to conduct the scheme and defraud the Plaintiffs. In doing so, the Complaint sufficiently alleges that Balle—a "person"—is distinct from the collaborative association of all Defendants—the "enterprise." Consequently, the Complaint sufficiently alleges the Balle is distinct from the "enterprise" and colluded with others in the "enterprise" to conduct the illegal activity alleged.

        3. *Personal Allegations*

        Balle also briefly argues that because his name is only specifically mentioned twice in the Complaint, Plaintiffs' allegations are insufficient to state a claim against him individually. Again, however, Balle mischaracterizes the allegations contained in the Complaint. The Complaint alleges that Balle was the co-founder of one of the corporations playing a central role in the scheme. Further, Balle allegedly gave his consent and approval for the solicitation of personal injury referrals, and occasionally treated patients and generated false medical reports. These allegations are sufficient to state a plausible claim that Balle was involved and participated in the alleged scheme.

\\\

\\\

*4. Predicate Acts*

Finally, Balle asserts that the Complaint fails to plead the requisite "predicate acts" under RICO with specificity because the Complaint never specifically identifies the "where, when, what and from and to whom" of the alleged mail and wire transfers.[2] Balle's assertion is incorrect. The Complaint identifies that between 2004 and 2010, each of the Defendants sent falsified written medical reports, billing records, diagnoses, tests, x-rays or scans, and fraudulent settlement demands to attorneys retained by claimants or to the Plaintiffs themselves. Further, Plaintiffs attached to their Second Amended Complaint the false documentation that was transmitted. These allegations sufficiently, and with the requisite particularity, establish the predicate acts element of the RICO claim.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendant Sebastian P. Balle, M.D.'s Motion to Dismiss (ECF No. 176) is DENIED.

DATED THIS 8th day of September, 2013.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[2] In order to establish the "pattern of racketeering activity" in a RICO claim, the plaintiff must be able to show at least two commissions of crimes from a qualifying list. 18 U.S.C. § 1961(1), (4); § 1962. These are referred to as predicate acts. *See, e.g., H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237 (1989). Mail Fraud under 18 U.S.C. § 1341 and Wire Fraud under 18 U.S.C. § 1343 both qualify as predicate acts. 18 U.S.C. § 1961(1).