1
2
3
4
5

**UNITED STATES DISTRICT COURT**

6

**DISTRICT OF NEVADA**

7

* * *

8
9

ALLSTATE INSURANCE COMPANY, et al.,

2:10-cv-02205-APG-NJK

10

Plaintiff,

11

vs.

**ORDER**
Plaintiffs' Motion to Strike Defendants' Expert Arthur Croft, D.C. (#309)

12

PETER MARIO BALLE, D.C., et al.,

13

Defendants.

14
15

Before the Court is Plaintiffs' Motion to Strike Defendants' Expert Arthur Croft, D.C.

16

(#309). The Court has considered Plaintiffs' Motion (#309), Defendants' Response (#322),[1] and

17

Plaintiffs' Reply (#323). The Court finds this motion appropriately resolved without oral

18

argument. Local Rule 78-2.

19

**I.    Background**

20

The rebuttal expert disclosure deadline in this case was May 16, 2013. Docket No. 201.

21

Defendants disclosed Arthur Croft, PhD. D.C., as their expert witness on May 16, 2013. The

22

Disclosure did not include Dr. Croft's report;[2] however, Defendants indicated that Dr. Croft

23

would rebut the opinions of Plaintiffs' expert, Craig Little, D.C. and that his testimony would

24

include patient evaluation, treatment and care, billing, and record keeping. Thereafter, on two

25

occasions, Defendants requested that the Court extend the rebuttal expert disclosure deadline.

26
27

[1]Defendants Accident Injury Medical Center and Sebastian Balle are the only defendants at issue here. The Court has already granted Plaintiffs' motion striking this expert regarding Defendant Peter Mario Balle. Docket No. 245, at 2.

28

[2]Defendants provided Plaintiffs with Dr. Croft's report on June 4, 2013.

1    Docket Nos. 217 and 221. The Court denied both requests for failure to show excusable neglect.

2    Docket Nos. 219 and 226.

3           On June 3, 2013, Plaintiffs filed a motion to strike Defendants' rebuttal expert. Docket

4    No. 229.  The Court denied that motion on July 2, 2013, finding that, although Dr. Croft's expert

5    report was not timely, the delay was harmless under the circumstances of this case. Docket No.

6    245, at 5.

7           Defendants produced Dr. Croft's "First Supplemental Report" on August 14, 2013,

8    Docket No. 309-2, and his "Second Supplemental Report" on September 16, 2013, Docket No.

9    309-3.

10          Plaintiffs deposed Dr. Croft on August 27, 2013. Docket No. 309, at 6. At the deposition,

11   Dr. Croft produced his case file, which indicated that Defendants' counsel did not formally retain

12   Dr. Croft until May 16, 2013. Docket No. 309-5. When asked about when he began working on

13   this case, Dr. Croft neither confirmed nor denied that he had not started working on this case

14   until May 16, 2013. Docket No. 311, at 24.  Additionally, when questioned about his August 14,

15   2013, supplemental report, Dr. Croft confirmed that he did not base it on information that

16   became available after he completed his initial report; instead he was "continuing on with the

17   work that [he] was doing." *Id*., at 28.

18          On October 2, 2013, Plaintiffs brought the present motion which, again, seeks to strike

19   Defendants' rebuttal expert. Docket No. 309.  In the alternative, Plaintiffs seek to strike Dr.

20   Croft's supplemental reports on the grounds that neither supplement was based on newly

21   available information. *Id*., at 18.

22   **II.     Request to Strike Dr. Croft**

23          Plaintiffs request that the Court use its inherent power to strike Dr. Croft as an expert.

24   Docket No. 309, at 15. According to Plaintiffs, Defendants misled the Court into believing that

25   they had retained Dr. Croft prior to May 16, 2013, and, therefore, committed fraud upon the

26   Court. *Id*.  Plaintiffs assert that the proper sanction for this conduct is to strike Dr. Croft as an

27   expert. *Id*., at 18.  Defendants oppose this motion and argue that the Court has already concluded

28   that the delay in producing Dr. Croft's expert report was harmless. Docket No. 322, at 9.

1      To resolve this matter, the Court has reviewed its prior order relating to Defendants' last

2  motion to strike as well as the briefing relevant thereto. *See* Docket Nos. 229, 237, 241, and 245.

3  In its Order, the Court determined that Defendants' disclosure of Dr. Croft's report was, in fact,

4  not timely; however, because there were numerous other delays in this case at that time, the

5  Court also determined that the delay was harmless. *Id*., at 4. The Court's focus in that order was

6  the date Defendants disclosed Dr. Croft's report; not the date that Defendants retained Dr. Croft.

7  *Id*. Moreover, Defendants indicated that they retained Dr. Croft in "early May 2013" and that

8  they disclosed the report on June 4, 2013. Docket No. 237, at 2. Therefore, it was already

9  apparent that Dr. Croft had been retained at the last minute. While the Court is troubled by what

10  may constitute a misrepresentation by Defendants, whether Defendants retained Dr. Croft in early

11  May 2013, or on May 16, 2013, would not have changed the Court's analysis in its earlier order.

12  Indeed, the Court even acknowledged that Defendants had made a number of litigation failures

13  and that the delay was not substantially justified. Docket No. 245, at 5. Accordingly, the fact that

14  Defendants appear not to have retained Dr. Croft until May 16, 2013, is not good cause for the

15  Court to alter its prior order. Plaintiffs' request that the Court strike Dr. Croft as an expert is

16  denied.

17  **III.    Alternative Request to Strike Supplemental Reports**

18      Plaintiffs have requested, in the alternative, that the Court strike Dr. Croft's two

19  supplemental reports. Docket No. 309, at 18. Defendants produced Dr. Croft's "First

20  Supplemental Report" on August 14, 2013, Docket No. 309-3, and his "Second Supplemental

21  Report" on September 16, 2013, Docket No. 309-4. According to Plaintiffs, these supplemental

22  reports were not based on newly available information, but instead were produced because Dr.

23  Croft did not have time to complete his initial report. *Id*. Defendants, on the other hand, contend

24  that Dr. Croft's supplemental reports were based on new information. Docket No. 322, at 8 and

25  11. Specifically, Defendants argue that Plaintiffs made additional disclosures relating to their

26  expert reports between May 2013 and September 2013, and that Dr. Croft relied on "revised

27  figures" as well as the deposition testimony of Plaintiffs' expert, Craig Little, D.C., to create at

28  least part of one of his supplements. *Id*.

1          **A.      Striking Supplemental Reports**

2          With an expert report, "the party's duty to supplement extends to both information

3  included in the report and to information given during the expert's deposition." Fed.R.Civ.P.

4  26(e)(2).   However, an expert's duty to supplement under Rule 26(e), is not a right to supplement

5  at will. A party may not use a supplemental report to disclose information that should have been

6  disclosed in the initial expert report, thereby circumventing the requirement for a timely and

7  complete expert witness report. *Abila v. United States*, 2011 WL 1447618, at *2 (D. Nev. Apr.

8  14, 2011) (*citing* 6 *Moore's Federal Practice* § 26.131); *see also Reid v. Lockhead Martin*

9  *Aeronautics Co.,* 205 F.R.D. 655, 662 (N.D. Ga. 2001) ("In short, Rule 26 imposes a *duty* on

10  Plaintiffs; it grants them no *right* to produce information in a belated fashion."). Rather,

11  "[s]upplementation under the Rules means correcting inaccuracies, or filling the interstices of an

12  incomplete report based on information that was not available at the time of the initial

13  disclosure." *Id*., (*quoting Keener v. United States,* 181 F.R.D. 639, 640 (D.Mont.1998)).

14          Notably, supplementation is not appropriate simply "because the expert did an inadequate

15  or incomplete preparation." *Rojas v. Marko Zaninovich, Inc.*, 2011 WL 4375297 (E.D. Cal. Sept.

16  19, 2011) *reconsideration denied,* WL 6671737 (E.D. Cal. Dec. 21, 2011) (*citing Akeva LLC v.*

17  *Mizuno Corp.,* 212 F.R.D. 306, 310 (M.D. N.C. 2002) (citations omitted)). As one district court

18  explained:

19          To rule otherwise would create a system where preliminary reports could be followed by
         supplementary reports and there would be no finality to expert reports, as each side, in
20         order to buttress its case or position, could "supplement" existing reports and modify
         opinions previously given. This practice would surely circumvent the full disclosure
21         requirement implicit in Rule 26 and would interfere with the Court's ability to set case
         management deadlines, because new reports and opinions would warrant further
22         consultation with one's own expert and virtually require new rounds of depositions. That
         process would hinder rather than facilitate settlement and the final disposition of the case.
23

24  *Id., (quoting Beller v. United States,* 221 F.R.D. 689, 695 (D. N.M. 2003)); *see also Akeva,* 212

25  F.R.D. at 310 ("To construe supplementation to apply whenever a party wants to bolster or

26  submit additional opinions would reek (*sic*) havoc in docket control and amount to unlimited

27  expert opinion preparation.").

28  . . .

                                        - 4 -

1    A party's failure to comply with the rules regarding expert witnesses and their reports

2    exposes that party to sanctions under Federal Rule of Civil Procedure 37(c). Rule 37 'gives teeth'

3    to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not

4    properly disclosed. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir.

5    2001). However, two express exceptions ameliorate the harshness of Rule 37(c)(1): The

6    information may be introduced if the parties' failure to disclose the required information is either

7    substantially justified or harmless. *Id.,* 259 F.3d at 1106, *citing* Fed.R.Civ.P. 37(c)(1).  Further,

8    the Court has wide latitude in using its discretion to issue sanctions under Fed.R.Civ.P. 37(c)(1).

9    *Id.*; citing *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico,*

10   248 F.3d 29, 34 (1st Cir. 2001).

11   In this case, Dr. Croft notes that his Initial Report is based on a number of depositions

12   and other materials, including the two reports by Plaintiffs' expert, Craig Little, D.C.[3] Docket

13   No. 309-2.  Dr. Croft also indicates in his Initial Report that the report will "be supplemented by

14   a supplemental report once [Dr. Croft has] had time to go through all the other materials." *Id.*, at

15   1.

16   The First Supplemental Report, which was disclosed on August 14, 2013, does not clearly

17   indicate whether it is based on newly available information. Docket No. 309-3. It states that it

18   concerns "the 85 claims which were reviewed by Dr. Little and upon which he formed his

19   opinions." *Id.* 309-3.  Additionally, Dr. Croft, at his deposition on August 27, 2013, specifically

20   testified that the First Supplemental Report was not based on any new materials. Docket No. 311,

21   at 27-28. Dr. Croft stated that he was "just continuing on with the work that [he] was doing," and

22   he agreed that he supplemented his initial report because he did not have time to formulate his

23   additional opinions when he was making his initial report. *Id.*

24   Similarly, the Second Supplemental Report, disclosed on September 16, 2013, states that

25   it concerns "the 85 claims which were reviewed by Dr. Little and upon which he formed his

26   opinions." Docket No. 309-4. Within the Second Supplemental Report, Dr Croft states "[h]aving

27

28       [3] Dr. Little's reports are based on his review of 85 actual cases managed by Defendant
Accident Injury Medical Center. *See* Docket No. 309-2.

1  the opportunity to continue my evaluation of this case, I offer the following opinions and

2  rationale for those opinions." *Id.*, at 2.  He also states that he has "analyzed the data obtained

3  from 81 of the 85 claims mentioned by Dr. Little." *Id.*  At no point in either supplement does Dr.

4  Croft state that he relied on newly available information to create his supplemental reports.

5        To rebut this evidence, Defendants assert that between May 2013 and September 2013

6  Plaintiffs "disclosed several supplemental reports surrounding figures devised by their expert, Dr.

7  Little." Docket No. 322, at 11. However, Defendants do not state that Dr. Croft relied on any of

8  those disclosures to formulate his supplemental reports and, further, they do not cite to any

9  portion of the report to support their assertion. *See id*. The Court will not weed through Dr.

10  Croft's report in hopes that it finds some support for Defendants' argument.

11        Defendants also state that "Dr. Croft explained in his deposition that the grading system

12  on the injury severity was in relation to the deposition of Dr. Little." *Id*.  However, Defendants

13  have failed to cite to any portion of Dr. Croft's deposition to support this claim. To the contrary,

14  it is clear from the deposition excerpts provided by Plaintiffs that Dr. Croft testified that,

15  although his "comments" regarded Dr. Little's deposition, he did not rely on Dr. Little's

16  deposition. Docket No. 311, at 27. Instead, Dr. Croft testified that he simply lacked time initially

17  to create a certain graph that he, presumably, produced after Dr. Little's deposition. *Id*.

18  Importantly, Plaintiffs have pointed out, and Defendants have not rebutted, that at no point in Dr.

19  Croft's Second Supplemental Report does he reference Dr. Little's deposition. *See* Docket No.

20  309-3.

21        Finally, Defendants assert that during the course of Dr. Little's deposition, "the parties

22  realized that Dr. Little had not been provided with all aspects of the claim file that was produced

23  to Defendants and that when he was opining on the claim file, it did not include property damage

24  information." Docket No. 322, at 11. However, how this assertion relates to or supports

25  Defendants' arguments is unclear and the Court will not make Defendants' arguments for them.

26  Additionally, Defendants again have failed to cite to the referenced deposition testimony.  As

27  such, the Court cannot discern how, or if, the referenced testimony supports Defendants'

28  position.

1    Based on the forgoing, it is apparent that Dr. Croft's supplemental reports were produced

2    as "supplements" because Dr. Croft lacked time to complete his initial report, and not because

3    Dr. Croft was provided with any new information.  Supplementation is not appropriate simply

4    "because the expert did an inadequate or incomplete preparation." *Rojas,* 2011 WL 4375297

5    (*citing Akeva LLC,* 212 F.R.D. at 310).  Rather, "[s]upplementation under the Rules means

6    correcting inaccuracies, or filling the interstices of an incomplete report based on information

7    that was not available at the time of the initial disclosure." *Abila,* 2011 WL 1447618, at *2

8    (*quoting Keener,* 181 F.R.D. at 640).  Here, Dr. Croft was neither correcting inaccuracies nor was

9    he adding interstices to an incomplete report based on information that was not available at the

10   time of the initial disclosure.  Accordingly, the Court finds that Dr. Croft's First and Second

11   Supplemental Reports were not proper under Rule 26(e).

12   The supplemental reports may still be introduced, however, if Defendants' failure to

13   disclose was either substantially justified or harmless. *See* Fed.R.Civ.P. 37(c)(1).  Defendants

14   have not offered any argument whatsoever as to why their lack of compliance with Rule 26 is

15   substantially justified, and the Court finds that Defendants' lack of compliance is not

16   substantially justified.

17   **B.   Harmlessness**

18   The Ninth Circuit has articulated several factors for the Court to consider when

19   determining whether a violation of the expert discovery rules was harmless, including: "(1)

20   prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that

21   party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or

22   willfulness involved in not disclosing the evidence." *Lanard Toys, Ltd. v. Novelty, Inc.*, 375 Fed.

23   Appx. 705, 713 (9th Cir.2010), *citing David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th

24   Cir.2003). Moreover, the Ninth Circuit has found that "even absent a showing in the record of

25   bad faith or willfulness, exclusion is an appropriate remedy" for a failure to comply with the

26   rules regarding experts and their reports. *Yeti by Molly*, 259 F.3d at 1106; *see also Wong v.

27   Regents of Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2005) ("[d]isruption to the scheduling of

28   the court and other parties is not harmless"). The burden is on the party facing exclusion of its

1   expert's testimony to prove the delay was justified or harmless. *Yeti by Molly*, 259 F.3d at 1107.

2          The Ninth Circuit has also identified factors that the district court should consider in

3   deciding whether to impose Rule 37(c)(1)'s exclusion of evidence sanction. *Wendt v. Host*

4   *International, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997), states that the court should consider the

5   following: (1) the public's interest in expeditious resolution of litigation, (2) the court's need to

6   manage its docket, (3) the risk of prejudice to the other parties, (4) the public policy favoring

7   disposition of cases on their merits, and (5) the availability of less drastic sanctions.

8          Here, the First Supplemental Report was disclosed on August 14, 2013, which was 71

9   days after Defendants disclosed the initial expert report. *See* Docket Nos. 309-3.  The Second

10  Supplemental Report was disclosed after Dr. Croft's deposition, on the last day of discovery, and

11  over a month after the prior "supplement." Plaintiffs had no means of predicting what additional

12  information Dr. Croft would disclose in his "supplements" and there is no apparent manner in

13  which they could cure that prejudice.  As one example, the Court cannot reopen discovery for

14  this limited purpose. Additionally, the parties are already consumed with other last-minute

15  discovery,[4] which they must complete in the next two months, in addition to preparing for trial.

16  Opening the door for even more discovery which, unlike the limited discovery currently in

17  progress could have been completed earlier had Defendants simply given their expert more time;

18  or, alternatively, allowing Defendants to use the "supplements" without opening the door for

19  additional discovery, would severely prejudice Plaintiffs.  Indeed, it would likely prejudice

20  Defendants as well.  Finally, Defendants carry the burden of showing harmlessness and they have

21  not done so here.  Accordingly, the Court grants Plaintiffs' request to strike the First and Second

22  Supplemental Reports.

23         Further, Rule 37's exclusion sanction is appropriate. Striking the First and Second

24  Supplemental Reports promotes the public's interest in expeditious resolution of litigation as well

25  as the court's need to manage its docket; it removes the risk of prejudice to Plaintiffs; and,

26

27         [4] Due to the delayed disclosure of Defendants' financial information, the parties must retain
    experts, conduct depositions, and disclose and review reports relating to the financial information
28  all before January 10, 2014. *See* Docket No. 319.

1    because Dr. Croft's Initial Report has not been struck, it does not obstruct the public policy

2    favoring disposition of cases on their merits. Finally, a monetary sanction or deadline extension

3    would not adequately address or cure Defendants' late disclosure and, therefore, the Court finds

4    that less drastic sanctions are not available.

5                                          **CONCLUSION**

6          Based on the foregoing, and good cause appearing therefore,

7          **IT IS HEREBY ORDERED** that Plaintiffs' Motion to Strike Defendants' Expert Arthur

8    Croft, D.C., (#309) is **GRANTED in part and DENIED in part**.

9          **IT IS FURTHER ORDERED** that Plaintiffs' request that the Court strike Dr. Croft as

10   an expert is **DENIED.**

11         **IT IS FURTHER ORDERED** that Plaintiffs' request that the Court strike Dr. Croft's

12   First Supplemental Report is **GRANTED.**

13         **FINALLY, IT IS ORDERED** that Plaintiffs' request that the Court strike Dr. Croft's

14   Second Supplemental Report is **GRANTED.**

15         DATED this 28th day of October, 2013.

16

17

18

19                                       _____
                                         NANCY J. KOPPE
20                                       United States Magistrate Judge

21

22

23

24

25

26

27

28