**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, et al.,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>PETER MARIO BALLE, D.C., et al.,<br><br>　　　　　Defendants. | 2:10-cv-02205-APG-NJK<br><br>**ORDER**<br>Defendants Accident Injury Medical Center Inc., and Sebatian Balle M.D.'s Motion to Strike Craig Little D.C., or Alternatively Strike Little's Second Supplemental Report and Limit Testimony (Docket No. 358). |

Before the Court is Defendants Accident Injury Medical Center Inc. and Sebatian Balle M.D.'s Motion to Strike Craig Little D.C., or Alternatively Strike Little's Second Supplemental Report and Limit Testimony (Docket No. 358). The Court has considered Defendants' Motion (Docket No. 358), Plaintiffs' Response (Docket No. 363), and Defendants' Reply (Docket No. 368). The Court finds this motion appropriately resolved without oral argument. Local Rule 78-2. For the reasons discussed below, Defendants' motion is DENIED.

**I.      Background**

On July 30, 2010, Plaintiffs produced an initial report by their expert, Dr. Criag Little, D.C. ("Dr. Little"), as part of the "pre-suit investigation of the case." Docket No. 363, at 4; Docket No. 358, at 4. The report was based on Dr. Little's personal review of certain claim files which included the medical records of 47 claimants who were treated at Accident Injury Medical Center ("AIM"). Docket No. 363-2 (Dr. Little's July 30, 2010 Report). Dr. Little also reviewed deposition testimony of Ms. Cecillia Soares, Dr. Peter-Mario Balle, and Dr. Arthur Rossi in a state court case, as well as a computer template of AIM's initial evaluation, follow-up report, and final report. *Id.*

1    Approximately two years later, on March 30, 2012, Plaintiffs designated Dr. Little as
2    their expert. Docket No. 358, at 4; Docket No. 363, at 4. A year after that, on March 30, 2013,
3    Dr. Little completed his first supplemental report. *Id*.; *see also* Docket No. 358-4 (Dr. Little's
4    March 30, 2013 Report). Dr. Little's March 2013 Report was based on his personal review of the
5    medical records of 85 total claimants who incurred charges for treatment at AIM. *Id*.

6    On August 15, 2013, Defendants AIM, Dr. Sebastian Balle, and Dr. Peter Balle deposed
7    Dr. Little. Docket No. 358, at 4; Docket No. 363, at 6-9. Dr. Little's July 30, 2010 Report, his
8    March 30, 2013 Report, and his CV were exhibits to the deposition. Docket No. 363, at 6.

9    On August 23, 2013, Plaintiffs conferred with AIM's counsel concerning x-rays which
10   had previously been requested in August 2012, but had not yet been produced. *Id*., at 9 (*citing*
11   Exhibit E, request for production 1). Plaintiffs' counsel sent a follow-up email concerning the x-
12   rays on September 5, 2013. *Id*., at 10 (*citing* Exhibit G). AIM's counsel promptly responded that
13   the x-rays would be produced on September 13, 2013, at AIM's deposition. *Id*.  AIM produced
14   the x-rays on September 12, 2013, and, thereafter, Plaintiffs provided the x-rays to Dr. Little for
15   his review. *Id*.

16   On October 30, 2013, Dr. Little issued his second and final supplemental report. *Id*.; *see*
17   *also* Docket No. 358-5 (Dr. Little's October 30, 2013 Report). Dr. Little indicated that he had
18   been provided x-rays for 34 claimants who had been charged for them at AIM, and his findings
19   centered around those x-rays. *Id*. Plaintiffs sent the second supplemental report to AIM's counsel
20   on October 31, 2013. Docket No. 363, at 11. Plaintiffs indicated that the report was based on the
21   x-rays that had been provided September 12, 2013, and offered to make Dr. Little available for
22   further deposition, if AIM so desired. Plaintiffs further offered to agree that AIM's expert, Dr.
23   Croft, could create a supplemental rebuttal report. Docket No. 363-11. AIM's counsel responded
24   that Dr. Little's supplemental report and the proposed deposition and rebuttal report and rebuttal
25   expert deposition were outside the limited scope for which the Court had reopened discovery.[1]

26
27        [1]Discovery closed on September 16, 2013. *See* Docket No. 319. On October 10, 2013, the
     Court reopened discovery for the limited purpose of allowing disclosure of a forensic account expert,
28   deposing that expert, allowing a rebuttal expert and deposing the rebuttal expert. *Id*.   The Court's
     Order was in response to Plaintiffs' motion, which indicated that they had not received the relevant

1  Docket No. 363-12.  Therefore, according to AIM's counsel, they did not have the authority to

2  conduct the additional discovery and AIM would be prejudiced by the new information because

3  AIM did not anticipate the additional report. *Id*. Plaintiffs responded that the parties could

4  stipulate to the additional discovery. Docket No. 363-13. Additionally, Plaintiffs reiterated that

5  the x-rays were not produced until September 12, 2013, and noted that Plaintiffs informed AIM's

6  counsel at the time the x-rays were produced that they would provide those x-rays to Dr. Little.

7  *Id*.  Plaintiffs asserted that AIM did not object to Dr. Little's review at that time and should have

8  known that Dr. Little would be providing a supplemental report. *Id*.

9          On December 20, 2013, Defendants AIM and Sebatian Balle M.D. filed the instant

10  motion to strike Dr. Little's opinions. Docket No. 358. Defendants argue that the Court should

11  find all of Dr. Little's opinions to be inadmissible or, alternatively, the Court should strike Dr.

12  Little's second supplemental report as untimely and beyond the scope of Dr. Little's expertise.

13  *Id*.[2] Defendant Peter-Mario Balle did not join the instant motion. Accordingly, Dr. Little's

14  testimony will not be struck as to Defendant Peter-Mario Balle.

15  **II.     Admissibility of Dr. Little's Testimony**

16          Defendants Accident Injury Medical Center Inc., and Sebatian Balle M.D.'s

17  ("Defendants") motion to strike argues that Dr. Little's opinions are inadmissible; therefore, it is

18  more appropriately labeled a motion in limine.[3] According to Defendants, Dr. Little's report

19  _____

20  financial documents until August 15, 2013, and, further, they had not determined that they needed
    a forensic account expert until after the depositions of Peter-Mario Balle on September 12, 2013, and
21  Sebastian Balle on September 13, 2013. Docket No. 310.  That motion was filed on October 2, 2013.
    *Id*.
22
        [2]On January 11, 2014, the same Defendants filed a Motion in Limine which makes many of
23  the same arguments set forth in the instant motion. Docket No. 382.  Accordingly, those arguments
    are deemed superseded by the Motion in Limine.
24
        [3]A motion in limine is a procedural device to obtain an early and preliminary ruling on the
25  admissibility of evidence.  *Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir.1999). In limine rulings
    are provisional. Such "rulings are not binding on the trial judge [who] may always change his mind
26  during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n. 3, (2000). Additionally,
    "[d]enial of a motion in limine does not necessarily mean that all evidence contemplated by the
27  motion will be admitted to trial. Denial merely means that without the context of trial, the court is
    unable to determine whether the evidence in question should be excluded." Ind. Ins. Co., 326
28  F.Supp.2d at 846.

should be deemed inadmissible for three reasons: "(1) [Dr.] Little fails to provide any reliable basis for his opinion regarding the reasonableness and necessity of chiropractic care provided by Defendants and utilized no accepted methodology in rendering the same; (2) [Dr.] Little did not utilize any accepted scientific methodology to conclude a statistically significant 'pattern' of chiropractic treatment by Defendants; and (3) [Dr.] Little is not a qualified expert in fraud or fraudulent activity, has no education or experience to support his competency to opine regarding fraud, and does not meet [the] FRE 702 or *Daubert* standard to opine fraud." Docket No. 358, at 3.

### A.    Federal Rule of Evidence 702

The Supreme Court and the Ninth Circuit have held that an expert's testimony is admissible only if (1) the expert is qualified; (2) his opinion is reliable; and (3) his testimony is relevant and will assist the trier of fact. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588–595 (1993); *General Electric Co. v. Joiner*, 522 U.S. 136 (1997); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *Primiano v. Cook*, 598 F.3d 558 (9th Cir. 2010); *Morin v. United States*, 534 F.Supp.2d at 1184, 1187 (D. Nev. 2005).  Fed.R.Evid. 702 permits a

> witness who is qualified as an expert by knowledge, skill, experience, training, or education [to] testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

"Rule 702 is applied consistent with the liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony." *Jinro Am., Inc. v. Secure Investments, Inc.*, 272 F.3d 1289 (9th Cir. 2001) (citations omitted). "An expert witness—unlike other witnesses—is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation, so long as the expert's opinion [has] a reliable basis in the knowledge and experience of his discipline." *Id.* (internal citations and quotation marks omitted).

### B.    Dr. Little's Qualifications

Here, Defendants argue that Dr. Little is not qualified to testify as an expert about x-rays

- 4 -

taken during chiropractic treatment because he is not a radiologist. Docket No. 358, at 15. The Court disagrees. As Defendants themselves point out, "[Dr.] Little's curriculum vitae is filled with relevant educational history and expertise in the field of chiropractic treatment." *Id*. The x-rays he reviewed were taken by chiropractors and their assistants for the purpose of chiropractic treatment. *See* Docket No. 363, at 19. Thus, the x-rays fall under Dr. Little's expertise. Additionally, Dr. Little's curriculum vitae specifically indicates that he is experienced in administering x-rays. Docket No. 385-6, at 7.  Accordingly, the Court holds that Dr. Little's background and experience satisfy the threshold qualification requirements of Rule 702(a). Defendants' arguments regarding the strength of Dr. Little's credentials relate to his credibility, and Defendants may, of course, attack his credibility on cross-examination. *See Kennedy v. Collegen Corp.*, 161 F.3d 1226, 1230–31 (9th Cir. 1998).

### C.    Reliability of Dr. Little's Testimony

Experts must not only be qualified to testify on a specific matter, but their testimony must be reliable. Expert testimony is reliable if it is "based upon sufficient facts or data, . . . the product of reliable principles and methods," and the expert "applies the principles and methods reliably to the facts of the case." Fed.R.Evid. 702. In *Daubert*, the United States Supreme Court set forth a non-exhaustive list of factors that may guide a court in assessing the reliability of offered testimony:

> (1) whether a scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error and the existence and maintenance of standards controlling the techniques operation; and (4) whether the technique is generally accepted.

509 U.S. at 593–94.

 In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court clarified that the trial court "may consider one or more of the more specific factors that *Daubert* mentioned when doing so will determine that testimony's reliability." *Id*. at 141. The *Daubert* factors, however, were not intended to be exhaustive, or to apply in every case. *Id*. at 158. The test of reliability is flexible, and "*Daubert* 's list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *United States v. Alatorre*, 222 F.3d 1098, 1101 (9th Cir.

- 5 -

2000) (*quoting Kumho Tire*, 526 U.S. at 141–42). The trial judge must have considerable leeway in deciding how to determine whether expert testimony in a particular case is reliable, "[t]hat is to say, a trial court should consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony." *Kuhmo Tire*, 526 U.S. at 152. Further, it is within the broad discretion of the trial court to determine whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter. *Id*. at 153.  Thus, reliability concerns may focus upon personal knowledge or experience rather than upon scientific foundations. *See United States v. Plunk*, 153 F.3d 1011, 1017 (9th Cir. 1998) (upholding the admission of expert testimony from law enforcement officer regarding jargon of narcotics trade on basis of expert's training, experience, and personal knowledge).

Here, Defendants assert that Dr. Little's testimony is not reliable for two reasons:

> 1. *Little Conducted No Studies or Analysis Using Generally Accepted, Peer Reviewed Methodology and Relies Only Upon His* Ipse Dixit *To Determine Whether Injury Existed And The Reasonableness of Care*

Docket No. 358, at 7 (emphasis in original).

> 2. *Little Cannot Reliably Testify That A Pattern Of Treatment Existed As No Scientific Methodology Was Used To Identify The Existence Of A Pattern*

Docket No. 358, at 11 (emphasis in original).

These arguments, however, do not make sense in the context of Dr. Little's opinions. First, Defendants' assertion that Dr. Little relied on "nothing more than his own *ipse dixit*" is factually incorrect. *See* Docket No. 358, at 8. Dr. Little cited to over a dozen authorities he considered in forming his opinions. Docket No. 363-3, at 23. Additionally, he reviewed each patient's medical records and the testimony of patients, Defendants, and Defendants' employees. *Id*. at 23-24.  The basis of Defendants' argument appears to be that Dr. Little did not consider property damage for each of the claimants' underlying bodily injury. Docket No. 358, at 8. Defendants have not cited to a single authority, however, which indicates that Dr. Little was required to consider property damage in forming his opinion on chiropractic treatment. Dr. Little considered the appropriate documentation from this case, consulted peer reviewed publications and, as discussed above, is qualified to testify on chiropractic treatment and the methods and

procedures in applying such treatment. Thus, the basis of his opinions is not solely his *ipse dixit*.

Next, Defendants' argument that Dr. Little conducted no studies or analysis using peer reviewed methodologies implies that the *Daubert* factors strictly apply to all expert testimony. As a stated above, however, the *Daubert* factors were not intended to be exhaustive, or to apply in every case. *Kumho Tire*, 526 U.S. at 158. Here, Dr. Little's testimony concerns the reasonableness and necessity of the billed treatment and referrals for each claimant. Thus, there was no study for Dr. Little to conduct. Further, his analysis was entirely appropriate for the type of testimony he set forth in his report. Dr. Little reviewed each patient's file and formed an opinion based on his knowledge of standards and procedures for chiropractic treatment. Additionally, as discussed above, Dr. Little cited extensively to the authorities, as well as his own experience and qualifications, on which his knowledge his based. Nevertheless, the Court will not reach an opinion on this argument as it has been superseded and expanded upon by Defendants' motion in limine. *See* Docket No. 382, at 8-13.

Finally, Defendants' assertion that Dr. Little is not qualified to opine that the files he reviewed reflected a pattern, assumes that Dr. Little and/or Plaintiffs have extrapolated his findings to all patients treated by Defendants and/or that the patterns he detected were beyond the expertise of an experienced chiropractor. Docket No. 358, at 11.[4] Dr. Little's report, however, repeatedly references "patterns in the 85 claimant files." *See e.g.* Docket No. 363-3, 19-20. It does not assert that the pattern continues beyond the files he reviewed. *Id*. It is merely an observation about the claims files specific to this case. Further, none of the patterns Dr. Little discusses is particularly complex, nor does he make broad statistical conclusions. Rather, Dr. Little, an experienced chiropractor, reviewed 85 chiropractic files and opined that a pattern of chiropractic treatments and procedures existed within those files. Defendants' argument that Dr. Little needs to be an expert in statistics or mathematics to opine about such a pattern is incorrect. As discussed above, Dr. Little is qualified to opine on chiropractic treatments and procedures.

---

[4]Defendants make a similar argument in their motion in limine. Docket No. 382, 4-3, 10-13. Accordingly, to the extent the motion to strike, Docket No. 358, and the motion in limine, Docket No. 382, overlap, Defendants arguments in the motion to strike are superseded by the motion in limne.

1   Therefore, Dr. Little is qualified to testify about his findings on the chiropractic treatments and

2   procedures within the 85 claim files he reviewed. If two or more of those claims files contain

3   similar information, he is qualified to indicate that is the case. Additionally, Defendants'

4   arguments regarding the strength of Dr. Little's credentials relate to his credibility, and, as

5   previously stated, Defendants may, of course, attack his credibility on cross-examination. *See*

6   *Kennedy,* 161 F.3d at 1230–31.

7   **III.    Alternative Request to Strike Dr. Little's Second Supplemental Report**

8           Defendants have requested, in the alternative, that the Court strike Dr. Little's second

9   supplemental report on the grounds that it was untimely and beyond the scope of Dr. Little's

10  expertise. Docket No. 358, at 4.  The extent of Defendants' timeliness argument is that the

11  supplement was produced 6 weeks after the close of discovery. Docket No. 358, at 4. This alone,

12  however, is not sufficient to show the disclosure was untimely. *See* Fed.R.Civ.P. 26(e)(2).

13  Rather, "[s]upplementation under the Rules means correcting inaccuracies, or filling the

14  interstices of an incomplete report based on information that was not available at the time of the

15  initial disclosure." *Abila v. United States*, 2011 WL 1447618, at *2 (D. Nev. Apr. 14, 2011)

16  (*quoting Keener v. United States,* 181 F.R.D. 639, 640 (D.Mont.1998)).  Here, the parties agree

17  that Defendants did not produce x-rays until September 2013 and that Dr. Little's supplemental

18  report was based on those x-rays. Therefore, Dr. Little's report was based on newly available

19  information and was proper under Fed.R.Civ.P. 26(e)(2).

20          Finally, as discussed above, Dr. Little's opinions relating to the x-rays in the second

21  supplemental report were within his expertise.

22  . . .

23  . . .

24  . . .

25  . . .

26  . . .

27

28

<u>CONCLUSION</u>

Based on the foregoing, and good cause appearing therefore,

**IT IS HEREBY ORDERED** that  Defendants Accident Injury Medical Center Inc., and Sebatian Balle M.D.'s Motion to Strike Craig Little D.C., or Alternatively Strike Little's Second Supplemental Report and Limit Testimony (Docket No. 358) is **DENIED**.


DATED: January 16, 2014.



_____
NANCY J. KOPPE
United States Magistrate Judge

- 9 -